HENRY SCHARENBROICH vs. ST. CLOUD FIBER-WARE CO.

Argued by appellant, submitted on brief by respondent, Oct. 30, 1894. Reversed Nov. 16, 1894.

No. 8812.

A servant voluntarily assumed the risk of injury in the employment.

Held, that the evidence conclusively shows that a servant not only knew the exact character and condition of the appliances furnished him by his master, but also understood, or by the exercise of common observation ought to have understood, the risks to which he was exposed by their use, and therefore must be deemed to have voluntarily assumed such risks.

Canty, J., dissenting.

Appeal by defendant, St. Cloud Fiber-Ware Company, a corporation, from an order of the District Court of Stearns County, L. L. Baxter, J., made March 7, 1894, denying its motion for a new trial, if plaintiff consent to reduce his verdict from $5,640 to $3,140.

On June 13, 1893, plaintiff Henry Scharenbroich was a servant of defendant at work as a common laborer in its pulp and paper mill at St. Cloud. The mill was operated by water power. He was twenty two years old and had worked in the mill basement two seasons preparing wood for pulp. It was his business also to turn on and shut off the water to start or stop the machinery. In turning on the water that day he slipped and his left foot was caught and injured in the manner described in the opinion. He brought this action to recover damages claiming the defendant was negligent in not boxing over the pinion and in neglecting to warn him of the

danger. Defendant answered claiming that whatever danger there was in letting on or shutting off the water was obvious and that plaintiff assumed the risk by entering into and continuing in the employment without complaint and that the injury he received was the result of his own negligence and want of care in hoisting the gate and turning on the water. The jury returned a verdict for plaintiff and assessed his damages at $5,640. Defendant on notice moved the court February 15, 1894, for a new trial. The court granted the motion unless plaintiff should within twenty days thereafter stipulate to reduce the verdict to $3,140, but denying a new trial if he should. Plaintiff so stipulated, and defendant appeals from the order.

*G. W. Stewart,* for appellant.

One entering into or continuing in the employment of another with knowledge of the risks which attend that employment and the conditions which surround it, dispenses with those safeguards which ordinarily it would have been the master's duty to have furnished. Consent beforehand exempts the master from the charge of negligence. This consent or assumption of risk extends to every risk of which the servant has knowledge or the means of knowledge, and in determining whether or not the servant has knowledge he will be presumed to be a person of ordinary capacity; he will be required to exercise his senses. *Fleming* v. *St. Paul & D. R. Co.,* 27 Minn. 111; *Hughes* v. *Winona & St. P. R. Co.,* 27 Minn. 137; *Clark* v. *St. Paul & S. C. Ry. Co.,* 28 Minn. 128; *Pederson* v. *City of Rushford,* 41 Minn. 289; *Olson* v. *McMullen,* 34 Minn. 94; *Berger* v. *St. Paul, M. & M. Ry. Co.,* 39 Minn. 78; *Walsh* v. *St. Paul & D. R. Co.,* 27 Minn. 367; *Quick* v. *Minnesota Iron Co.,* 47 Minn. 361; *Michigan Cent. R. Co.* v. *Smithson,* 45 Mich. 212.

No manufactory or business establishment is bound at its peril to make use only of the best and safest methods. Every man must be left to manage his own business in his own way. If his way is not the best, yet if others with full knowledge of what his way is see fit to cooperate with him in it, courts cannot interfere to prevent or punish the manufacturer in damages when the risks the servants voluntary assume result in injuries to those servants. *Kelley* v. *Sil-*

*rer Spring Co.*, 12 R. I. 112; *Sullivan* v. *India Mfg. Co.*, 113 Mass. 396; *Hayden* v. *Smithville Mfg. Co.*, 29 Conn. 548.

The cases cited below illustrate the application of this rule of law to the accidental injury of servants under various circumstances: *Gibson* v. *Erie Ry. Co.*, 63 N. Y. 449; employee killed by a projecting roof. *DeForest* v. *Jewett*, 88 N. Y. 264; employee killed by falling into a sluice. *Kresanowski* v. *Northern Pac. Ry. Co.*, 18 Fed. Rep. 229; employee injured while riding on tender. *O'Rorke* v. *Union Pac. Ry. Co.*, 22 Fed. Rep. 189; car repairer killed while repairing car. *Ennis* v. *Maharajah*, 40 Fed. Rep. 784, and *Pingree* v. *Leyland*, 135 Mass. 398; man caught in a winch. *Dillon* v. *Union Pac. R. Co.*, 3 Dill. 319; failure to provide signal bell on locomotive. *Coullard* v. *Tecumseh Mills*, 151 Mass. 85; *Cariack* v. *Merchants' Woolen Co.*, 146 Mass. 182; *Probert* v. *Phipps*, 149 Mass. 258; boys injured in machinery. *Taylor* v. *Carew Mfg. Co.*, 140 Mass. 150; employee injured by falling into an elevator well. *Linch* v. *Sagamore Mfg. Co.*, 143 Mass. 206; employee injured by turning steam into defective pipes. *Woods* v. *St. Paul & D. Ry. Co.*, 39 Mich. 435; brakeman injured in trestle work. *Balle* v. *Detroit Leather Co.*, 73 Mich. 158; workman killed by falling into vat. *Kean* v. *Detroit C. & B. R. Mills*, 66 Mich. 277; man caught in iron rollers. *Melzer* v. *Peninsular Car Co.*, 76 Mich. 94; employee injured on grindstone. *Hickey* v. *Taaffe*, 105 N. Y. 26; girl caught in ironing machine.

The law assumes that every one has knowledge of the destructive forces of nature and the powers of the earth and air. That fire will burn, water drown, ponderous machinery crush, projected bodies move and fall to the ground; that gravitation is a constantly acting force; that water makes a floor slippery; that a human being is liable to slip and fall in slippery places; knowledge of all these things come to all men of sound mind in the ordinary course of life. *McGowan* v. *La Plata M. & S. Co.*, 3 McCrary, 393.

The peril, whatever it was, was plainly before plaintiff, he had but to look to be fully warned. *Sjogren* v. *Hall*, 53 Mich. 274; *Truntle* v. *North Star W. M. Co.*, 57 Minn. 52.

The master is not guilty of negligence in setting the employee at

work with dangerous machinery, though uncovered, if the latter is instructed with respect to operation of the machinery and the risks so that he might take care of himself, or if the employment and machinery are of such character that the risks are so apparent that the employee must necessarily comprehend them. *Carroll* v. *Williston*, 44 Minn. 287; *Sullivan* v. *India Mfg. Co.*, 113 Mass. 396; *Hayden* v. *Smithville Mfg. Co.*, 29 Conn. 548.

Knowledge on the part of the employer and ignorance on the part of the employee are of the gist of the action; or, in other words, the master must be at fault and know it and the servant must be free from fault and ignorant of the master's fault if the action is to be maintained. *Doyle* v. *St. Paul, M. & M. Ry. Co.*, 42 Minn. 79.

*Taylor, Calhoun & Rhodes*, for respondent.

If the purpose for which a wheel is used requires it to be uncovered, the master could not reasonably be expected to cover it. A circular saw in operation is extremely dangerous, but the purpose for which it is used prevents its being covered and hence it is not reasonable that it should be. But in the case at bar neither defendant's business nor the operation of any of its machinery was in any way aided or made more convenient by leaving the wheel uncovered and unprotected. Placing an empty box over it would have made it perfectly safe. Leaving it wholly unprotected without any cause, immediately adjoining where the employee stood when starting or stopping the water wheel, an operation requiring his utmost strength and performed by turning a shaft in the same manner that a brake on a railway car is turned, was simply gross inexcusable carelessness. Under the circumstances defendant failed to perform its duty of providing a reasonably safe place for plaintiff to work in. He did not appreciate or realize the risk; it had never been explained to him in any manner, and that his foot was liable to be caught and drawn between the wheel and the floor had not occurred to him. While he knew that he might possibly fall on the wheel, the space between the wheel and the floor was so small that it had never occurred to him and he did not realize that he was liable to be drawn between the two.

The principle that a servant may know the condition of machinery fully and yet not be aware of the risk and hence not barred from re-

covery, is firmly imbedded in our law.  *McDonald* v. *Chicago, St. P.,
M. & O. Ry. Co.,* 41 Minn. 439; *Lake Shore & M. S. Ry. Co.* v. *Fitz-
patrick,* 31 Ohio St. 479; *Russell* v. *Minneapolis & St. L. Ry. Co.,*
32 Minn. 230; *Woutilla* v. *Duluth L. Co.,* 37 Minn. 153; *Clark* v.
*St. Paul & S. C. R. Co.,* 28 Minn. 128; *Hungerford* v. *Chicago, M.
& St. P. Ry. Co.,* 41 Minn. 444; *Hall* v. *Chicago B. & N. R. Co.,* 46
Minn. 439.

The case of *Nadau* v. *White River L. Co.,* 76 Wis. 120, is quite
similar to the case at bar.  Plaintiff was caught in an uncovered cog
wheel.  See *Kane* v. *Northern Cent. Ry. Co.,* 128 U. S. 91; *Kelleher*
v. *Milwaukee & N. R. Co.,* 80 Wis. 584.

MITCHELL, J.  This action was brought to recover for personal in-
juries alleged to have been caused by defendant's negligently leaving
unguarded and uncovered a pinion in its pulp mill, in which plaintiff
was employed.

The power to operate the machinery was furnished by a water
wheel under a small annex to the mill.  This wheel was connected
with the machinery by a horizontal shaft running under the floor of
the annex.  Upon the end of the shaft was a pinion connecting with
a cog wheel immediately under the floor.  This pinion was placed
in a hole cut in the floor, so that it was partly above and partly be-
low the floor.  The hole in the floor was somewhat larger than the
pinion, thus leaving an open space of two or three inches at the side
of the pinion.  When the machinery was in motion the pinion re-
volved quite rapidly.  That part of the pinion which extended above
the floor was open and unguarded.  At one side of this pinion, and
a few inches distant from it, there came up through the floor, from
the water wheel below, a vertical shaft, with a horizontal handle or
lever attached to the upper end of it.  This was for the purpose of
turning the water off and on the water wheel, which was done by
turning the lever.  The usual and natural place for a person to stand,
when turning the lever, was between it and the wall of the room, thus
leaving the upright shaft between him and the pinion.  It took con-
siderable force to turn the lever, and the higher the water the more
force was required.  During high water, when the water was first
turned on, it would strike the cogs of the wheel, and spray up through
the hole in the floor, rendering it wet, and consequently somewhat

slippery. There were no cleats on the floor, against which to brace the feet while turning the lever.

The plaintiff, a young man, aged about twenty two years, and presumably of ordinary intelligence, was employed as a laborer in the mill, and among his regular duties was that of turning the water off and on, which had to be done quite a number of times every day. He was not a skilled mechanic, but he had worked in this mill during two previous seasons, and the evidence is conclusive that he was fully aware of all the facts above stated, and had full knowledge of the exact nature and condition of the alleged dangerous machinery. On the occasion when he was injured, he had been sent to turn off the water, for the purpose of permitting a belt to be put on the "barker." This having been done, he then proceeded to turn on the water again. He had turned it partly on, when the water, being more than usually high, sprayed up in considerable quantities on the floor where he was standing. For this reason, and also because it required his full strength to turn the lever, and the space where he stood, between the upright shaft and the wall, was rather narrow, he shifted his position, and moved around nearly opposite the end of the pinion; and while there, in the act of turning the lever, his foot slipped, came in contact with the revolving pinion, and was drawn down between the pinion and the floor, and thereby sustained the injuries complained of.

Had the case turned exclusively upon the question whether the defendant was negligent in leaving this pinion unguarded, the case would undoubtedly have been one for the jury.

The question here, however, is whether, upon the facts, the plaintiff must be deemed to have voluntarily assumed all the risks incident to the use of the machinery in the condition in which it was, or whether that also was a question for the jury. It is thoroughly established in the law that a servant does not necessarily assume the risks incident to the use of unsafe machinery because he knows its character and condition. He must also have understood, or by the exercise of ordinary observation ought to have understood, the risks to which he is exposed by its use. In this case it is undisputed that the plaintiff knew the exact nature of the situation. He knew that the floor was wet; that this made the floor slippery; that there was nothing, except the smooth floor, against which to brace his feet when turning the lever; that if his foot slipped there was nothing to prevent it

from coming in contact with, and being caught by, the revolving pinion; and that if it did it would be injured. It required no special skill to understand these things, as they were patent to the sense, upon the most ordinary observation. Indeed, he admits that he was aware of all this. His only excuse is that he did not think of his foot slipping. But in view of the situation—the floor being wet, and he in the act of applying special force to turn the lever—he must or ought, in the exercise of ordinary intelligence, to have understood that there was increased liability of his foot slipping, as this was a matter of ordinary experience, and in accordance with the most simple and familiar laws of nature.

It is impossible to conceive of anything which any one could have told him, about either the situation or the risks incident to it, which was not perfectly patent to the senses, in the exercise of common observation by an adult of ordinary intelligence.

The doctrine of the voluntary assumption of risks by a servant is, for manifest reasons, not especially favored by the courts, and ought to be very cautiously applied.

But the doctrine is firmly established in the law, and, if it is to be applied in any case, we think it must be held applicable to the facts of this case.

Order reversed.

GILFILLAN, C. J., absent on account of sickness; took no part.

CANTY, J. (dissenting). I cannot concur in the foregoing opinion, so far as it holds that it conclusively appears that plaintiff fully knew and appreciated, or, in the exercise of ordinary care, should have known and appreciated, the risks incident to the work in which he was injured. All of the conditions were obvious to a person of ordinary intelligence, except the condition of the floor, and the soles of his shoes when he was bracing himself in the act of turning the lever. There might, and ordinarily would be, sand, dirt, or grit on the floor, and also on the soles of his shoes. This would cause his feet to stick to the floor when pulling on the lever, whether the floor was wet or dry. The constant throwing of water on the floor during this spell of high water would naturally tend to wash off this sand, dirt, and grit, make the floor soft and slippery, and the soles of his shoes might happen to be more clean and free from grit than at other

times.    These are changes in the condition of things which he might not know or appreciate.    It does not appear by the evidence that he ever operated this lever before when the water was high, or when it had been thrown on the floor by the action of the wheel, or that he had ever slipped before when operating it.    He was not a skilled mechanic, and should not be expected to exercise all the skill and forethought of one, or of a person of sufficient skill, experience, and capacity to build, have charge of, or operate the mill.    While the defense of the assumption of the risk by the servant is well established in the law, it should not be favored.    It too often puts the courts in the position of holding that, the more dangerous the master's premises or appliances, the less risks he runs.    If they are so dangerous that any one ought to know the dangerous character, the master runs no risk, incurs no liability, at all.    The greater his moral duty, the less his legal duty.    The burden is on the defendant to establish the defense of assumption of risk.    Unless it appears by the evidence on plaintiff's side of the case that he both knew and appreciated the risk, the burden is on defendant to prove that he did.    It seems to me that it does not so conclusively appear in this case as to make it a question for the court.    It is a question for the jury, and the order appealed from should be affirmed.

(Opinion published 60 N. W. 1093.)

Petition for reargument denied Dec. 4, 1894.