(64 App. Div. 63.)

### WARSZAWSKI v. McWILLIAMS.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

1. MASTER AND SERVANT—INJURY TO SERVANT—ASSUMPTION OF RISK.

　　Plaintiff was injured by falling into a coal chute while unloading a car load of coal. The floor of the trestle was about 40 feet above the ground, and at different places openings had been put, into which the coal was dumped. At the time of the accident plaintiff was attempting to pry open the doors of a gondola car, and was standing on some planks which had been placed, in the presence of the plaintiff, on the railroad track in the trestle, and over one of the coal chutes. While the plaintiff was so engaged the plank broke, and he fell through the chute. These planks, which were not shown to have been defective, were not furnished by the defendant, but were used in keeping coal in freight cars, though for a long time such boards had been used as in this instance, to the knowledge of the defendant. Plaintiff had been in defendant's employ for a number of years, and was familiar with the work and with the dangers. Held, that the plaintiff assumed the risk.

2. SAME—FELLOW SERVANTS.

　　Plaintiff had been directed by the foreman to open the bottom door of a gondola car, and, failing to do so, had been ordered to pry it open. In order to do this, the planks were placed across a coal chute, under the direction of the foreman, for the plaintiff to stand on. Held, that the placing of the boards over the chute was merely an incident of the work, in which the foreman was a co-employé with the plaintiff.

Appeal from trial term, Erie county.

Action by Joseph Warszawski against John J. McWilliams. From a judgment of the supreme court at a trial term in favor of defendant, plaintiff appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

George W. Gillette, for appellant.
Louis L. Babcock, for respondent.

McLENNAN, J. In the month of January, 1900, the defendant was, and for several years prior thereto had been, engaged in operating a coal trestle situate in the town of Cheektowaga, in the county of Erie. The trestle was a covered structure several hundred feet in length, between 25 and 30 feet wide, extending east and west, and was used for the purpose of unloading coal direct from railroad cars into chutes or storage bins, which were a part of the structure. At an elevation of about 40 feet, and directly under the roof of the trestle, a substantial floor was constructed of plank, which extended over the entire space within the trestle and was supported by timbers extending from the ground to the floor. At the east there was a single incline track, which extended up to the floor at the easterly end of the trestle, where it branched, and from which point two railroad tracks extended the entire length of the trestle, about the distance from each other that railroad tracks are ordinarily constructed. At short distances from each other, between the rails of each of the railroad tracks, and also between the two tracks and upon the outer side of each, there were openings into which coal from the cars was dumped or shoveled, and dropped into the chutes or bins beneath the floor. At the easterly end of the trestle the openings between the two tracks were narrower than the others, on account of the close proximity of the two tracks where they left the switch and branched from the single incline track. Coal was carried into the trestle by the use of gondola cars, ordinary flat cars, and box cars, by running them up the incline, and on to one or the other of the tracks extending through the trestle. The gondola cars were supplied with doors in the bottom, which were opened by the use of a large wrench applied to an axle, which extended out to one side of the car, and by turning which a chain was loosened or unwound; and the weight of the coal forced the door of the car downward, and permitted the coal to fall into the opening below. When unloading such a car, men were employed—the plaintiff, with others—to shovel the coal into the center of the car, and thus cause it all to run out. The coal from the ordinary flat car was shoveled over the side into openings between the railroad tracks, or at the outer side of such tracks. When the ordinary box car was used, boards seven or eight feet long, about ten inches wide, and an inch thick, called in the evidence "coopering boards," which had been placed at the doors of the box car to keep the coal in, were removed and thrown to one side about the trestle; and the coal was shoveled by the men out of the doors of the box cars, and into the holes or openings between

the railroad tracks, or into such other openings as were most con-
venient. It frequently happened during the winter season that the
coal in the gondola cars became frozen, so that when the wrench
was applied to the cross bar, and the chain which held up the door in
the bottom of the car was loosened, the door would not open by
the weight of the coal above; and when that occurred it was the
practice to take a heavy iron bar and go upon the other side of
the car, and pry or loosen the doors, so that they would drop down
and permit the coal to fall into the bins below. On the day in ques-
tion a gondola car was at the easterly end of the trestle, ready to
be unloaded. It stood on the northerly track, directly over the first
or most easterly opening, which was about three feet square, and
into which it was proposed to empty the car. Directly south of
such opening, and between the two tracks, there was another open-
ing, about three feet long and less than two feet wide, located so
close to the northerly track that it was nearly covered up by the
projecting gondola car. Still further to the south, and between the
rails of the southerly track, there was another opening about three
feet square, and which came to within a few inches of the middle
opening, and to the side of the car. To the south and east of this
southerly opening the floor was solid to the side and end of the
trestle. On the west there was a floor space between it and the
next opening of two feet. On the north there was a space between
it and the middle opening of more than a foot in width, all of
which was solidly planked, and upon which the employés could go
and work in safety. The plaintiff, with two or three other em-
ployés of the defendant, got upon the top of the coal in the gon-
dola car, ready to shovel the same towards the center when the
door in the bottom of the car should be opened by the use of the
wrench. There being no one ready to immediately open the bot-
tom of the car, the plaintiff was directed by defendant's boss or
foreman to take the wrench and open the car. He got down from
the top of the car, took the wrench, and attempted to open the
doors in the bottom, but found that the coal was so frozen that
the doors would not open; and he was then directed by the boss
to take a bar and go upon the other side of the car and attempt
to open the doors. In so doing it was more convenient to stand
over the opening in the floor between the rails of the southerly
track, and next to and immediately south of the car which he was
attempting to unload. To make it more convenient for him to do
such work, one of the "coopering boards," so called, many of which
were about the trestle, having been thrown there from box cars
as they were unloaded, was placed across the opening, one end
resting upon each rail of the southerly track. The plaintiff saw
the board, the manner in which it was placed, and complained that
it was too narrow, and that he could not turn around upon it, and
for that reason could not properly do the work standing on it; and
two other boards of the same kind were obtained and placed along-
side of it, by direction of the boss. The plaintiff then went upon
them, and commenced, by the use of the iron bar, to loosen or open
the door in the bottom of the gondola car. While thus engaged one

of the boards upon which he was standing broke, and he fell into the bin below, a distance of some 30 or 40 feet, and received the injuries of which he complains.

The evidence conclusively shows that the boards on which the plaintiff stood, or those of like character, were not placed in the trestle or kept there by the defendant for the purpose for which they were used at the time in question. It appears, however, that for a long time prior to the time of this accident such boards were used by the employés for such purpose, to the knowledge of the defendant. There is no suggestion in the evidence that there was any latent defect in the boards upon which the plaintiff stood; that they were rotten, knotty, or in any manner defective. They were just what they appeared to be,—sound boards, about six or seven feet long, eight or ten inches wide, and an inch thick,—and, so far as appears, were of the ordinary strength of boards of that character. There is no suggestion in the evidence that the boss or foreman was not in all respects competent to perform the duties of such position. The plaintiff had been in the employ of the defendant for several years prior to the accident, and was engaged in doing substantially the same work, to wit, unloading coal cars in the trestle in question. He was entirely familiar with the manner of doing the work, had frequently seen boards of the character in question used for the purpose for which he used them, knew how the boards came to be in the trestle, and, so far as appears, was entirely familiar with all the details of doing the work in question. We think these facts fail to establish a cause of action against the defendant, and that the motion for a nonsuit was properly granted. At the time of the accident the plaintiff and other employés were simply engaged, under the direction of a competent boss, in attempting to open a door in the bottom of a car, so that it could be more readily emptied of its load of coal. The method of doing the work, and the difficulties which were liable to occur in case the coal was frozen, were fully understood and known to all concerned. The character of the structure and of all the surroundings was also well known and understood. All the dangers were apparent, and were in plain view, and of a character to be readily appreciated. It was perfectly plain to be seen that if a person stepped or fell into one of the many openings in the floor of the trestle, all of which were in plain sight, he would fall to the bottom of the bin or chute underneath, and sustain injury. There was a substantial walk about the opening into which the plaintiff fell, more or less convenient for the employés to stand upon to perform the work required of them. It was, however, considered by the plaintiff and his co-employés that the car in question could be more conveniently opened if the floor space was enlarged, and one of the openings therein partially and temporarily closed. To accomplish such purpose, they took what was at hand, to wit, three sound inch boards, about ten inches wide. After they were placed in position in the presence of the plaintiff, he stepped upon them, and the result showed that they were not strong enough to bear his weight, and in addition the strain which he put upon them by attempting to pry open the

door in the bottom of the car, and the accident resulted. There were plenty of other boards of the same character at hand, and, if they had been made double or treble thickness over the opening, clearly they would not have broken.   At all events, they were not furnished by the defendant for the purpose to which they were put, and the plaintiff was quite as able to judge of their strength as any one, and to form such judgment did not require any technical skill or knowledge.   If the defendant had kept strips of lath or one-half inch stuff about or in the trestle, an employé could not call upon him to respond in damages in case he sustained injury while knowingly attempting to make such strips support his weight, and equally so although he was aided in the enterprise by defendant's boss or foreman.   The evidence fails to establish negligence on the part of the defendant.   He had a right to have his coal trestle in precisely the condition in which it was, and, so far as appears by the evidence, he furnished to his employés such appliances as were reasonably necessary for the safe performance of the work in which they were engaged, and it must be held, under all the circumstances, that the plaintiff assumed the risk incident to the doing of the work upon which he was engaged at the time of the accident; and further, we think it clear, under the authorities, that the placing of the boards across the opening in question was merely an incident of the work, in doing which the boss or foreman of the defendant was a co-employé with the plaintiff, and that the defendant is not liable for his acts, or any instructions which the foreman may have given in respect to such detail.   Many cases might be cited in support of the foregoing propositions.   In Moore v. McNeil, 35 App. Div. 323, 54 N. Y. Supp. 956, the rule is stated in the head-note as follows:

"A master is not liable for injuries sustained by a servant in consequence of the breaking of a plank in a scaffold, in the construction of which the servant was assisting, where there is no evidence that the planks supplied by the master for the erection of the scaffold were unfit for that purpose, and it appears that the selection of the plank which broke, from among those supplied, was the act of the foreman of the gang engaged in constructing the scaffold, or of some member thereof."

In Stourbridge v. Railroad Co., 9 App. Div. 129, 41 N. Y. Supp. 128, it was held that a master discharged his duty to a servant when he supplied a sufficient quantity of proper and suitable material, and that the choice of material, the selection of sound beams, the rejection of such beams or parts as were defective,—work which necessarily is involved in the erection of structures of wood,—were details of the work, and strictly the duty of the fellow servant.   In Kimmer v. Weber, 151 N. Y. 417, 45 N. E. 860, it was held that if a master furnishes his servants suitable materials for the construction of a scaffold on which to do work, and the servants voluntarily construct it according to their own judgment, the master is not liable to the servants for the manner in which they used the material.   In the case at bar, as we have seen, there were plenty of good boards at hand in order to have made a suitable and sufficiently strong platform over the opening through which the plaintiff fell, if such platform was necessary in the performance of his

work. All that was necessary was to place the boards there at hand one above the other, two or three thicknesses, instead of placing only one thickness over the opening. In Kimmer v. Weber, supra, it was also held that the master is not liable to his servant for the negligent performance of some detail of the work intrusted to the servant, whatever may have been the grade of the servant who executed such detail. In Golden v. Sieghardt, 33 App. Div. 161, 163, 53 N. Y. Supp. 460, 461, the rule is stated by Mr. Justice Rumsey as follows:

"When anything is connected with the work, and is an essential·part of its performance, is done by persons who are engaged in the prosecution of the work, and is necessary to be done to insure the completion of the work, that thing is a detail of the work, within this rule. Especially is this so when the work itself is the making of a place where it is to be done. Where that is the case, the rule which requires the master to provide a reasonably safe place for his servants in which to do their work has no application."

In the case at bar, under the construction of the evidence most favorable to the plaintiff, he, with the foreman, was engaged in making a place in which to work,—a place from which they could more conveniently open the car in question. If the place thus made by them was unsafe, it was their own fault, and the defendant is not liable. To the same effect are Carpasso v. Woolfolk, 163 N. Y. 472, 57 N. E. 760; Kiffin v. Wendt, 39 App. Div. 229, 57 N. Y. Supp. 119, and cases cited.

We think the provisions of the labor law to which our attention has been called by the plaintiff's counsel have no application to the facts of this case. It may be doubted whether the plaintiff gave sufficient evidence to absolve himself from the charge of contributory negligence. As we have seen, he deliberately walked upon a board only an inch thick and eight or ten inches in width, placed over a hole some forty feet deep, and in addition put upon it the strain caused by attempting to pry open the door of the car with an iron bar, without making any examination or investigation to ascertain whether such board was of sufficient strength to support his weight and such strain; and, as we have seen, he did not attempt to make the boards safe, which he could easily have done by putting two or more boards together, there being plenty of them at hand for that purpose. But it is unnecessary to decide that question, as we think, for the other reasons stated, the plaintiff's exceptions should be overruled, and judgment directed for the defendant, with costs.

Plaintiff's exceptions overruled, motion for new trial denied, and judgment ordered on the verdict, with costs. All concur.