## BEARD v. GOULDING ET AL.

[No. 8,164. Filed January 16, 1914.]

1. TRIAL.— Verdict.— Answers to Interrogatories.—A general verdict for plaintiff decides all the material issues in his favor, and is not overcome by the jury's answers to interrogatories except when there is such antagonism between them that both cannot stand. p. 401.

2. APPEAL.— Review.— Verdict.— Answers to Interrogatories.— In reviewing the ruling on a motion for judgment on the jury's answers to interrogatories, the court on appeal can look only to the pleadings, general verdict and the answers to the interrogatories, and can indulge no intendments or presumptions in favor of such answers, but must reconcile them with each other and with the general verdict, if it reasonably can be done. p. 401.

3. MASTER AND SERVANT.— Injuries to Servant.— Trial.— Answers to Interrogatories.—In a servant's action for injuries from the breaking of a ladder, the jury by its answers to interrogatories showing that persons using the ladder or looking at it from the ground could not see that it was defective, and that plaintiff did

not know that it was defective, considered in the light of other answers showing that the ladder was worn and old and in a dilapidated condition and that the rung which broke could be seen by one using the ladder or looking at it from the ground, and that the ladder was defective and that the rung broke because worn from use, evidently used the word "defective" as meaning "so weak as to be liable to break", and did not mean to say that one using the ladder or looking at it from the ground could not know its worn, old and decayed condition; hence such interrogatories did not conflict with each other, and the rendition of judgment for defendants thereon was not erroneous. p. 401.

4.  MASTER AND SERVANT.—*Injuries to Servant.—Knowledge of Defects.—Assumption of Risk.*—An adult servant of ordinary intelligence is presumed to have been capable of ascertaining every fact which could have been apprehended by the senses of a person having the same opportunities in relation to the dangerous conditions which caused the injury; and will be held to have assumed the risk, even though such danger was created by his master's negligence. p. 404.

5.  MASTER AND SERVANT.—*Injuries to Servant.—Assumption of Risk.*—A ladder is a simple implement requiring only average intelligence to comprehend the dangers of its use, so that where an employe, who was injured by the breaking of a ladder, knew that such ladder was worn and old, he was chargeable with knowledge that it might break under his weight in using it, and assumed the risk thereof, even though the master was negligent in permitting him to use it. p. 405.

From Clark Circuit Court; *Harry C. Montgomery,* Judge.

Action by David Beard against John Goulding and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*George H. Voigt* and *Stotsenburg & Weathers,* for appellant.

*M. Z. Stannard, Paris & Trusty* and *James W. Fortune,* for appellees.

IBACH, J.—This was an action by appellant against appellees to recover damages for personal injuries sustained by him while in their employ as an engineer in their coal elevator, and is based upon the alleged negligence of appellees in not providing a proper ladder for appellant's use in

the performance of the work he was engaged to do. The complaint, after averring facts showing the relation of master and servant, and a description of the work appellant was required to do and the character of his working place, proceeds, "that at the time of the grievances hereinafter mentioned there was kept and maintained a wooden ladder running from the first floor of said defendants' elevator down to the basement of said plant; that said ladder was about eighteen feet long and was made of wood, consisting of two upright wooden pieces about eighteen feet long, which were fastened together with wooden cross pieces or rungs placed about fourteen inches apart and being joined to the pieces on each end thereof; * * * that said ladder * * * was more than fifteen years old, and at said day and for a long time prior thereto said defendants had carelessly and negligently maintained, kept, and used said ladder which was at said time and for a long time prior thereto had been old, decayed, weak, rotten, unsafe, and unfit for use in all its parts; that said defendants at said time knew of the unsafe, unfit, weak, rotten and decayed condition or by the exercise of ordinary care and diligence could have known of the same; * * * that on June 23, 1909, plaintiff was in the employment of defendants as an engineer, engaged in running the engine on the first floor of said elevator; that on said day in the proper discharge of his duties as such servant of defendants, it became and was necessary for plaintiff to go down said ladder to the basement of said elevator, and while in the line of the duty of his employment, he started down said ladder and while using due care he stepped on the rung of said ladder, when on account of the unfit, unsafe, old, decayed, weak and rotten condition of said ladder as aforesaid, the same broke under his weight, thus and thereby precipitating this plaintiff more than fifteen feet upon the hard ground, thereby injuring him," etc., "that at the time he attempted to use said ladder and at all times prior thereto plaintiff was wholly ignorant of

the defective, unsafe, rotten and decayed condition of said ladder and that its unfit, unsafe, rotten and decayed condition was wholly unknown to him when he attempted to use the same at the time of his injury aforesaid; that his injuries were caused without any fault or negligence on his part.'' There was an answer in general denial, a trial by jury, and with a general verdict for $2,000 in favor of appellant the jury returned answers to 113 interrogatories. Upon motion of appellees, judgment was rendered in their favor on the answers to interrogatories. Error is assigned in the court's sustaining the motion of appellees for judgment on the answers to interrogatories, and in rendering judgment thereon.

In considering the motion for judgment on the answers to interrogatories, it must be kept in mind that the general verdict decided all of the material issues in favor of appellant, and that the answers to interrogatories will not overthrow the general verdict except when they are so antagonistic to each other that both cannot stand. Another well known proposition of law controlling motions for judgment on the answers to interrogatories is that in the consideration of such a motion the court can look only to the pleadings, general verdict and the answers to the interrogatories, and nothing will be taken by intendment or presumption in favor of the answers to interrogatories to aid them in overthrowing the general verdict. It is also the duty of the court to reconcile the answers to the interrogatories with each other and with the general verdict, if it reasonably can be done. *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297, 53 N. E. 235; *Harmon* v. *Foran* (1911), 48 Ind. App. 262, 94 N. E. 1050, 95 N. E. 597.

The facts found by the jury in answer to interrogatories, so far as they are pertinent, are in substance as follows: That appellant was employed as an engineer; that it was his duty to operate the engine situated

on the first floor of the elevator; that he had other duties to perform which required him to use the ladder; that he dropped a cold chisel from the first floor of the elevator to the basement and had gone down the ladder to procure the chisel; that there were two ways by which he could ascend from the basement to the first floor—one by means of the ladder, and the other by going up an incline; that the ladder consisted of two upright wooden pieces about eighteen feet long, fastened together with wooden cross pieces or rungs placed about fourteen inches apart and joined to the pieces on each side thereof; that the ladder fell two and one-half or three feet short of reaching from the ground to the first floor; that the ladder was old and the step in question was partly decayed, weak and unfit for use; that the rungs, and the one in question were worn from use, but were not rotten; that the worn condition of this rung rendered the ladder and this rung defective and unsafe for use; that the rungs were constructed of timbers two and one-half inches wide, one inch thick and sixteen inches long, and the rung in question was worn to the extent of one inch; that the ladder was situated outside the elevator and the step which broke was worn down as the result of being stepped upon by persons using it; that the step broke at the point where it had been worn by persons stepping upon it in using it, and broke as a result of being worn; that the defendants, or either of them could, by standing on the ground in front of the ladder see that the step which broke was old and worn at the point where it broke, but could not see that it was defective or that it was worn so thin as to be apt to break under use; that the defendants, or either of them, could, while using the ladder, see that the step which broke was old and worn at the point where it broke, but could not see or discover the defect which caused it to break; that the worn condition of the rungs, including the one in question, was open and obvious to the person using the same; and at the time appellant was injured the ladder was in full view of the

person using the same or standing on the ground in front thereof; that appellant had good eyesight and there was nothing to prevent him from seeing the step in question when passing the step and using the ladder; that if he had looked when ascending the ladder on the morning of the injury, he could have seen the size and worn condition of the step which broke with him; that he had used the ladder shortly before he was injured in ascending to or descending from the first floor of the elevator to the ground below; that in using the ladder, he took hold of its rungs with his hands and saw their worn condition; that he knew of the worn condition of the step in question, but did not know that it was defective; that he knew that he could go to and from the first floor of the elevator by means of the incline; that the incline was not a safer way to reach the first floor than the ladder; that he, before his injury, had frequently used the incline to reach the place of his employment but most frequently used the ladder to do so; that while using the ladder, or standing on the ground he could see that the step which broke with him was old and worn at the point where it broke, but not that it was defective; nor could he see from the ground that it was so thin it was liable to break; that the material of this step was unsound; that the step broke at a place where the break was new, and broke by reason of its being worn from use; that the step was in a defective condition, the nature of the defect being that it was worn and decayed; that there is no evidence that there was any latent or hidden defect at the place where the step broke, and no such latent or hidden defects were shown; that the rotted and decayed condition of the step was on its surface, and it was sound below its surface; that the step was made of poplar timber, the nature of which is to decay on the surface and not to decay within; that the step did not break because of any hidden or latent defect; that when appellant was injured he was not using the ladder in compliance with any order or instruction of the appellees or

either of them; that the round which broke was covered with grease at the time; that appellant's opportunities to discover the condition of the ladder were equal to the opportunities of the appellees, or either of them; that during the four weeks preceding the accident appellant used the ladder more times than appellees or either of them; that the ladder was defective at the time appellant was injured; that appellant did not know that the ladder was defective.

Upon first reading there seems to be conflict between some of the facts found by the jury in answer to the interrogatories. The jury finds that the worn and old and decayed condition of the ladder, and of the step which broke, could be seen by one using the ladder, or looking at it from the ground. It also finds that the ladder was defective because it was worn from use, and that the step which broke with appellant broke because it was worn from use. Yet it finds that one using the ladder, or looking at it from the ground could not see that the ladder was defective, and that appellant did not know that the ladder was defective. Perhaps this conflict may be removed if we consider that the jury used the word "defective" as meaning "so weak as to be liable to break", and that when stating that one could not see its defects, or did not know that it was defective, the jury did not mean to say that such a one did not know the worn, old and decayed condition of the ladder.

We may grant for the purposes of discussion, that the evidence may have shown, and the answers to interrogatories do not disprove, negligence of the employer in allow-

4. ing the servant to use the ladder in its old, worn, and weakened condition. But "an adult servant of ordinary intelligence is presumed to have been capable of ascertaining every fact which could have been apprehended by the senses of a person having the same opportunities as he had for exercising those senses in relation to the dangerous conditions which caused the injury" (4 Labatt, Master and Servant [2d ed.] §1313), and is held to have assumed the

risk from those dangers which he is presumed to have apprehended. Usually where a servant knows the conditions which cause a risk, he is held to a knowledge of the risk. That is, if a person of ordinary intelligence who was aware of the conditions must either have understood, or have been chargeable with negligence in failing to understand, the hazards to which these conditions exposed him, such person is considered to have assumed the risk as an open, obvious danger, even though such danger was created by his master's negligence. 3 Labatt, Master and Servant (2d ed.) §§1191, 1186a.

A ladder has uniformly been held to be a simple implement, requiring only average intelligence to comprehend the dangers of its use. 3 Labatt, Master and Servant (2d ed.) §924a, notes 9, 10. *Jenney Electric, etc., Co.* v. *Murphy* (1888), 115 Ind. 566, 18 N. E. 30; *Meador* v. *Lake Shore, etc., R. Co.* (1894), 138 Ind. 290, 37 N. E. 721, 46 Am. St. 384. In the present case the ladder may perhaps be regarded more as a part of appellant's working place, rather than as a tool to work with, but that would not lessen the degree of comprehension of obvious dangers incurred in the use of a ladder which the law casts upon appellant. The jury has found that appellant knew that the ladder was worn and could see that it was old, and knew that the rung which broke was worn and could see that it was old, that the rung broke by reason of being worn from use, that the ladder was defective because worn from use and decayed, that the decay was only upon the surface, and that no latent defects were shown. It seems to us that any person of ordinary intelligence is chargeable with the knowledge that an old and worn round in a ladder may break under his weight in using it. Though the jury finds that appellant did not know that the ladder was defective, yet it finds that he knew all of the conditions which made it defective, and that knowing such conditions he had made use of it for at least four weeks, and that during that time

he used it more often than his masters, and that his opportunities for knowing of its defects were equal to those of his masters. Such being the case, appellant is chargeable with constructive, even if not with actual knowledge, that the ladder might break under his weight while using it, and must be held to have assumed the risk of using it, even though his master was negligent in permitting him to use it.

It was said in the case of *Scharenbroich* v. *St. Cloud Fiberware Co.* (1894), 59 Minn. 116, 60 N. W. 1093, ''It is thoroughly established in the law that a servant does not necessarily assume the risks incident to the use of unsafe machinery because he knows its character and condition. He must also have understood, or by the exercise of ordinary observation ought to have understood, the risks to which he is exposed by its use. In this case it is undisputed that the plaintiff knew the exact nature of the situation. He knew that the floor was wet; that this made the floor slippery; that there was nothing, except the smooth floor, against which to brace his feet when turning the lever; that if his foot slipped there was nothing to prevent it from coming in contact with, and being caught by, the revolving pinion; and that if it did it would be injured. It required no special skill to understand these things, as they were patent to the sense upon the most ordinary observation. Indeed, he admits that he was aware of all this. His only excuse is that he did not think of his foot slipping. But in view of the situation—the floor being wet, and he in the act of applying special force to turn the lever—he must or ought, in the exercise of ordinary intelligence, to have understood that there was increased liability of his foot slipping, as this was a matter of ordinary experience, and in accordance with the most simple and familiar laws of nature. It is impossible to conceive of anything which any one could have told him, about either the situation or the risks incident to it, which was not perfectly patent to the senses, in the exercise of common observation by an adult of ordinary intelli-

gence.'' The facts of the case at bar are such that the dangers from using the ladder in question should certainly be held apparent to one whose knowledge of the conditions causing the danger was as complete as appellant's, for no special skill or experience was required to comprehend such danger. The following cases also generally uphold our decision. *Montgomery Coal Co.* v. *Barringer* (1905), 218 Ill. 327, 75 N. E. 900; *Goddard* v. *McIntosh* (1894), 161 Mass. 253, 37 N. E. 169; *Anderson* v. *H. C. Akely Lumber Co.* (1891), 47 Minn. 128, 49 N. W. 664; *Rooney* v. *Brogan Constr. Co.* (1909), 194 N. Y. 32, 86 N. E. 814; *Armour* v. *Brazeau* (1901), 191 Ill. 117, 60 N. E. 904; *Warszawski* v. *McWilliams* (1901), 64 App. Div. 63, 71 N. Y. Supp. 680; *Borden* v. *Daisy Rolling Mill Co.* (1898), 98 Wis. 407, 74 N. W. 91, 67 Am. St. 816.

The court committed no error, and the judgment is affirmed.

›Note.—Reported in 103 N. E. 875. As to assumption of risk and contributory negligence in law of master and servant, see 97 Am. St. 884; 98 Am. St. 289. As to the servant's assumpton of risk of dangers created by master's negligence, which might have been discovered by the exercise of ordinary care on the part of the servant, see 28 L. R. A. (N. S.) 1250. As to servant's assumption of obvious risks of hazardous employment, see 1 L. R. A. (N. S.) 272. See, also, under (1) 38 Cyc. 1869, 1929; (2) 38 Cyc. 1928; (3) 38 Cyc. 1930; (4) 26 Cyc. 1196; (5) 26 Cyc. 1186, 1213.