[No. 6761.   Decided September 7, 1907.]

JAMES D. COX, *a Minor, by His Guardian Ad Litem, Kate
Alden, Respondent,* v. CAPITOL BOX COMPANY,
*Appellant.*[1]

MASTER AND SERVANT—INJURY TO SERVANT—YOUTHFUL EMPLOYEES
—FAILURE TO INSTRUCT—CONTRIBUTORY NEGLIGENCE—ASSUMED RISKS
—EVIDENCE—QUESTION FOR JURY.   In an action by an employee, a
boy eighteen years of age, who was injured while working with an
inexperienced assistant sixteen years of age, in operating, for the
first time, a ripsaw in a box factory, the questions of plaintiff's con-
tributory negligence, and whether he assumed the risks, and of de-
fendant's negligence in placing an incompetent co-employee at work
with plaintiff, and in not instructing or warning the plaintiff and
his co-employee as to the work and dangers, are for the jury, where
it appears that the plaintiff had never run the saw and protested
against doing the work for want of experience, but was ordered to
do so by the foreman, and where the foreman placed a boy sixteen
years of age, who had never worked in a mill before that day, at
work with him as an assistant at dangerous work requiring care
and judgment, without giving any instructions as to how the work
should be done, and plaintiff was injured through the removal, in
an improper manner, of material from the saw by the assistant,
concerning which no warning or instructions were given either of
them.

Appeal from a judgment of the superior court for Pierce
county, Chapman, J., entered November 10, 1906, on the
verdict of a jury rendered in favor of the plaintiff, after a
trial on the merits, in an action for personal injuries sus-
tained by an employee in operating a saw.   Affirmed.

*R. S. Eskridge (Philip Tindall, of counsel), for appellant.*
*Govnor Teats, for respondent.*

HADLEY, C. J.—This is an action to recover damages for
personal injuries.   There was testimony to support the fol-
lowing facts:   The defendant is a manufacturer of boxes, and
among other things, it makes grape boxes from veneer.   In

[1]Reported in 91 Pac. 555.

the process of making grape boxes, it cuts two ventilators in each end of the veneer with a ripsaw. The veneer is cut into strips from sixteen to eighteen inches in length, and of proper width for making into boxes. Several hundred of these strips are then tied into a bundle and, with the strips standing on end, the bundle is from sixteen to eighteen inches high, and of equal or greater length across the table. After they are tied up, the bundles are taken to a ripsaw table for the purpose of cutting the ventilators. The guide of the ripsaw table is placed at the proper distance from the saw, and while the bundle stands upon the ends of the strips, it is pushed by the operator across the saw which cuts the ventilators. All guards are removed from the saw, and it is left fully exposed, this being necessary in order to cut the slits for ventilating purposes. The saw is exposed above the table about an inch and a half or two inches, which is the depth of the slits cut in the veneer.

Two persons are required to handle the bundles during the operation of sawing the ventilators. One stands at the front of the saw, and pushes the bundle along over it. The other stands in the rear, receives the bundle as it comes over the saw, and then passes it back to the one in front, who runs it over the saw again to cut another row of ventilating slits. The saw revolves toward the one in front, who adjusts the bundle to the guide and then pushes it over the saw, leaning forward as the bundle moves from him across the table. As he pushes, both hands are upon the bundle and his face is downward until the top of the saw has cleared the bundle, when the other party, who is called an "offbearer," takes it, as aforesaid. At this juncture the operator's right hand is immediately over the saw. As the saw emerges from the edge of the bundle next to the operator, it begins to throw dust and, to protect his eyes, he pulls his hat down over them, and this obstructs his view of the offbearer. Considerable force is required to push the bundles over the saw, inasmuch as they range in weight from thirty to sixty pounds. Care is required

of the offbearer in taking the bundles away from the saw. If the bundle is jerked from the operator while he is in the position above described, his hand is liable to fall down upon the saw.

The plaintiff had worked now and then around machinery for several years, but had never done the kind of work above described, he being but eighteen years of age at the time of the accident. On the day of the accident, a boy by the name of Griffin applied to the defendant for work. He was about sixteen years of age, and weighed about one hundred pounds. He had never before worked in a mill. During the forenoon of that day, Griffin worked taking away material from an ordinary ripsaw which the plaintiff was running. The work was simple, as he merely carried away the stuff as it was ripped. During that time he now and then put sticks on top of the saw which were thrown toward the plaintiff, until plaintiff asked him to stop it, Griffin apparently not realizing the danger that might result from such amusement.

During the afternoon of that day, the foreman of that department went to the plaintiff and ordered him to operate the veneer ventilating saw heretofore described. The plaintiff objected, saying he had never done that work and did not understand it. The foreman replied that they had a big order and that the plaintiff must take up that work. At the same time he ordered the boy Griffin to act as offbearer for the plaintiff, the duties being as heretofore described. The foreman said: "You want to be careful and don't get your mits in here. If you do, you are liable to get them whacked off. I got a couple of fingers cut off ventilating this stuff." He also said to the plaintiff to be careful, and he ran one bundle through the saw. It was testified, however, that he did not show the boy Griffin how his work should be done, or otherwise warn or instruct him.

The boys proceeded with the work until about half past four o'clock in the afternoon, when the plaintiff was passing a bundle over the saw. It had almost reached the point where

the plaintiff was to let go of it, his hat being pulled over his eyes to protect them from the dust, when Griffin quickly jerked the bundle away, and the plaintiff's hand fell upon the saw, whereby it was severely cut and torn, leaving permanent injuries. The plaintiff looked up and Griffin still held the bundle. Plaintiff looked at his hand and made some exclamation, when Griffin became frightened and ran away. There is really but little dispute about the foregoing facts, and in any event there is sufficient evidence to sustain all that is above stated. The cause was tried before a jury, and a verdict was returned for plaintiff in the sum of $2,500. Judgment was entered for that sum, defendant's motion for new trial was denied, and it has appealed.

The errors assigned are that the court refused to take the case from the jury at the close of respondent's evidence, and again at the close of all the evidence; also that appellant's motions for judgment notwithstanding the verdict and for new trial were denied. These assignments all involve the sufficiency of the evidence to establish the liability of appellant. Appellant, by its answer, not only denied negligence on its own part, but pleaded contributory negligence on respondent's part, and also alleged that the accident was due to the negligence of a fellow servant, and that respondent assumed the risk. The question of contributory negligence under such evidence as was submitted here was clearly for the jury, as has been repeatedly held by this court. Perhaps in an ordinary case the court might have concluded under this evidence that the proximate cause of the accident and injury was the negligence of the fellow servant, and that it was, therefore, a mere question of law for the court, and not one involving facts for the jury. The circumstances shown in evidence were, however, not usual. Here was a dangerous saw, revolving at great speed, in an exposed position. The exposure seems to have been necessary in order to accomplish the work as designed. Common experience would seem to suggest that about

such a dangerous machine and situation only thoughtful persons of mature and deliberate judgment should be permitted to work. In any event, if young persons without maturity of mind and without experience are employed, it follows with equal force that they should be carefully shown how the work should be done, and fully warned against the dangers of failing to follow instructions.

Here was a young man eighteen years of age, who had been employed at other work in the factory. The foreman ordered him to forthwith take charge of this ventilating saw. He remonstrated on the ground of lack of experience, but he was commanded to proceed at once with the work. A boy sixteen years of age, who had never worked in a mill before that day, was ordered to take the position at the other side of the saw and discharge the duties heretofore described. This boy was not instructed as to his duties, and was not warned of the danger that might result to his working companion under such circumstances as have been detailed. That he was not a boy of deliberate or mature mind is not only indicated by his youth, but also by other facts. In the forenoon of that day he, for amusement, threw sticks upon the ripsaw to see them whirled away. These were thrown near the face of respondent, who narrowly escaped injury therefrom. Again, when respondent was injured, the young boy became alarmed and ran away. Such facts indicate extreme boyishness, and lack of judgment or experience sufficient for the responsible position he was directed to fill. If it be said that appellant had not actual knowledge of these boyish traits, it may also be said that such traits may reasonably be expected in all boys of that age, unless by actual experience certain boys may have demonstrated more serious, thoughtful, and mature judgment. Perhaps a person older than respondent might have refused to work with such an inexperienced boy at such a place, but respondent was himself a mere boy. He had not done this work before and perhaps did not realize the danger of such a situ-

ation as arose.  Moreover he was required by his employer to act quickly and without time for deliberation.  It should not therefore be said, as a matter of law, that he assumed the risk and, under such circumstances, we think it was properly for the jury to determine whether appellant was negligent in placing so young and inexperienced a person at work at that place; whether it neglected to properly instruct him how to safely do the work, or to warn both him and the respondent of the incidental danger; and also whether the injuries of the respondent were primarily traceable to such negligence.  The court submitted these questions to the jury, and the verdict established the negligence of appellant.

Neither party has cited in the briefs any authorities touching any question involved.  The facts are such as lead us into the realm of fundamental principles which operate, or should operate, between men.  Legal precedents are not necessary where the consciences of ordinary and reasonable minds universally accept certain principles as fundamentally right and just.  Such minds intuitively believe that, if an employer assumes to employ children or persons of extreme youth and inexperience about dangerous machinery, even if the act of employment in a given case is not itself negligence, it is at least negligence for the employer not to first inform himself as to the experience and capability of the youth to cope with the particular situation, or to fail to properly and carefully instruct him about his work, or to warn him against impending danger to himself and others.

In *Kirby v. Wheeler-Osgood Co.,* 42 Wash. 610, 85 Pac. 62, this court, however, discussed to some extent the rules for determining whether an employer has been negligent in the employment of children and young persons.  Within what is there said, it was not for the court under the facts in this case to determine as a matter of law that appellant was not negligent.  Under instructions, the court properly submitted all questions of negligence to the jury, and the jury having

found that appellant was negligent in the premises, the verdict should be sustained for the foregoing reasons.

The judgment is affirmed.

CROW, MOUNT, FULLERTON, RUDKIN, and DUNBAR, JJ., concur.