## SAN FRANCISCO & P. S. S. CO. v. CARLSON.

(Circuit Court of Appeals, Ninth Circuit. May 18, 1908.)

No. 1,542.

1. NEGLIGENCE—TRIAL—QUESTIONS FOR JURY—PROXIMATE CAUSE OF INJURY.

What was the proximate cause of a personal injury is ordinarily a question for the jury, to be determined as a fact under proper instructions, in view of the circumstances attending it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, §§ 327–332.]

2. MASTER AND SERVANT—INJURY TO SERVANT—ASSUMED RISK.

An employé does not assume any risk arising from his employer's failure to perform the duties owing from him to the employé with respect to the appliances furnished for the doing of the work.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 551–558.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

3. SAME—ACTION FOR INJURY—ISSUES FOR JURY.

In an action by an employé against a steamship company to recover for a personal injury resulting from the catching of a freight elevator on a steamship, which plaintiff was operating, alleged to have been due to the absence of a bumper, or safety block, the questions of the proximate cause of the injury, of negligence, and contributory negligence held properly submitted to the jury under proper instructions.

In Error to the Circuit Court of the United States for the District of Oregon.

William D. Fenton and Ben C. Dey, for plaintiff in error.

Henry E. McGinn, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The defendant in error brought this action to recover damages for injuries sustained by him by reason of the alleged negligence of the plaintiff in error, defendant below and owner and operator of the steamship St. Paul. The case shows that the plaintiff in the action was regularly employed by the steamship company as a longshoreman, but on the day of his injury was serving as winchman, in the absence of the regular winchman. The winch was used to work a lever by means of which the two elevators of the ship, called, respectively, the "port elevator" and the "starboard elevator," were lifted and lowered in the process of loading and unloading freight. The elevators were moved up and down by means of wire cables, which cables were attached to a beam, and which beam was about 8 feet above the deck of the ship and about 20 feet above the bottom of its hold. The cables so attached passed down on either side of the elevators to the bottom thereof, then immediately under them, then up on the other side of the elevator, and then over a pulley to a drum, where it was wound up by force of a steam engine so operating the contrivance that, as the cable of one elevator was wound around the drum and that elevator raised, the other cable

would unwind and lower the opposite elevator. The beam to which the cables were attached had a flange by which the elevators were liable to be caught, and which it seems did in fact catch the starboard elevator on the occasion in question, resulting in the plaintiff's injury. To prevent the elevators from reaching the flange, the defendant company attached to the beam what the plaintiff in error calls "bumpers" and what the defendant in error denominates "safety blocks," which bumpers or safety blocks had rubber on their underside and extended about 8 inches below the beam, thus preventing, when in place, the elevators from becoming jammed and caught in the flange. There was evidence tending to show that the bumper or safety block of the starboard elevator shaft had in some way become detached, resulting in the catching of that elevator in the flange of the beam and its subsequent dropping with the plaintiff, and it is the alleged negligence of the defendant in failing to keep the bumper or safety block in place that is the ground of the plaintiff's action. The answer of the defendant company put in issue its alleged negligence, and also set up in defense that the plaintiff was himself negligent in the operation of the elevator, that his injury was caused by reason of some fellow servant raising the port elevator while the starboard elevator was caught, thus allowing the latter to fall, and also that the plaintiff assumed the risk of danger incident to the operation of the elevators, all of which affirmative defenses were put in issue by the plaintiff.

The first point made and insisted upon by the plaintiff in error is that the court below erred in refusing to instruct the jury to return a verdict for the defendant, in support of which it is contended, first, that the absence of the bumper or safety block was not the proximate cause of the plaintiff's injury. In submitting the case to the jury, the court below instructed them upon that point as follows:

"It is and was the duty of the defendant company to furnish the plaintiff a safe place in which to work, and reasonably safe appliances and safe machinery with which to do his work; but I instruct you that the duty of the master in this regard is fully performed when he uses due care and precaution in providing such safe place and machinery, and if, after having observed such care and precaution, the machinery becomes at fault or defective in some way without his knowledge, then he would not be liable. But if he knew, or ought to have known by the observation of reasonable care and foresight, that the defect existed, then he would be accountable for any damages ensuing by reason of such defect. It is also the duty of the defendant to keep the machinery in safe and suitable repair; that is, he must use ordinary diligence and care to see that it is so kept in repair. Negligence may be defined in a general way as the doing of a thing which the dictates of common prudence or foresight would indicate ought not to be done, or which a reasonably careful and prudent man would not have done, having in mind the attending conditions and circumstances of the occasion, or the omission to do a thing which the same prudence and foresight would say ought to be done, considering again the attending conditions and circumstances. And now, keeping in mind the duties imposed upon the employer—that is, the defendant—and the elements that go to make up negligence, it is for you to determine from all the evidence adduced in your hearing upon the subject, and applying your own common knowledge and experience, whether or not the defendant was chargeable with negligence in connection with the absence of the safety or bumper blocks in the starboard elevator, and for the alleged irregularity in the movement of the port elevator while the star-

board elevator remained fast by reason of being jammed against the beam above. These things you are to consider: The absence of the blocks; the manner in which the elevator became fast; the irregularity of the movement of the port elevator, if you find that the movement of such elevator was irregular, while the other was jammed above; and the way or manner in which the plaintiff and the foreman of the defendant were at work at the time to relieve the starboard elevator. And you are to ascertain and fix, if possible, the responsibility as it respects the relative parties as to the condition and operation of the elevator; and if you find, from a full and fair consideration of the whole subject, that the defendant has been or was negligent, and that its negligence was approximate [the proximate] cause of the accident and injury to plaintiff, then the plaintiff will be entitled to recover, unless you shall find in favor of the defendant as to one or more of the defenses interposed, which I will now explain to you. You are to understand by the proximate cause that cause which conduced directly to the accident or injury."

The chief officer of the steamship had, on his cross-examination by counsel for the plaintiff, testified as follows:

"Q. Did you make an examination of these bumpers before the ship left San Francisco? A. When are you referring to? Q. On the trip from San Francisco, the time that Carlson was hurt, did you make any examination of the elevators? A. I would not say that particular trip. Q. It is customary, isn't it, for the officers of the ship to always make a tour of inspection? A. Yes, sir. Q. At sea? A. At sea; yes, sir. Q. And he takes you with him? A. Yes. Q. And whom does he take with him? A. The chief steward. Q. And did you make an examination on that trip every day when you were coming from San Francisco to Portland of the freight elevators? A. Why, no, sir. Q. Why did you not? A. Why, it was impossible to get there. The ship was full of cargo; that is, in the hold of the ship. Q. Did you make any inspection before the men commenced work here in Portland to ascertain whether those bumpers were there? A. You could not get there at that time; no, sir. Q. So no examination was made to ascertain whether those bumpers were there. When did you make an examination, can you tell, prior to the time this man was hurt, to see whether those bumpers were there? A. I would not say whether they were there or not. Q. You don't know? A. No, sir. Q. Did you make any examination, after the accident happened to Carlson, to determine how it was that this thing got stuck up there in the flanges, or what has been termed the 'flange'? A. Yes, sir. Q. You did make an examination? Did you find the bumpers on the starboard elevator? A. I can't say. Q. You don't remember? A. No, sir."

Redirect examination:

"Q. If they were taken off, you did not replace these bumpers after the accident? A. If the bumpers were taken off, they were not replaced, sir."

We are of the opinion that the court below was right, both in respect to its refusal to direct a verdict for the defendant and in its instruction upon the subject of proximate cause. "The proximate cause," says the Supreme Court in Insurance Co. v. Boon, 95 U. S. 130, 24 L. Ed. 395, "is the efficient cause, the one that necessarily sets the other causes in operation. The causes that are merely incidental, or instruments of a superior or controlling agency, are not the proximate causes and the responsible ones, though they may be nearer in time to the result. It is only when the causes are independent of each other that the nearest is, of course, to be charged with the disaster." Under the evidence in the case the question was properly one for the jury, as it usually is, under appropriate instructions. Said the court in Milwaukee, etc., Ry. Co. v. Kellogg, 94 U. S. 474, 24 L. Ed. 256:

"The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end. that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. 2 W. Bl. 892. The question always is: Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application; but it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

In respect to the alleged assumption of risk by the plaintiff it is enough to say that an employé does not assume any risk arising from his employer's failure to perform the duties owing from him to the employé with respect to the appliances furnished for the doing of the work in question.

The only point in the case about which we have had any doubt is that of the alleged contributory negligence of the plaintiff. He testified, among other things, that the starboard elevator got caught in the flange of the beam because the bumper or safety block had become detached; that he tried to loosen it with a piece of scantling, and, that not succeeding, the quartermaster of the ship took charge and worked at it a while, and then the foreman of the work, one Smith; that the foreman and the quartermaster ran the port elevator up and down a little; that they would raise it four or five feet, and then drop it, thinking that in that way they would loosen the starboard elevator; that finally the foreman got a keg of lead weighing about 300 pounds and told the witness to take hold of the other end of it; that on rolling the keg on the starboard elevator the latter fell with the plaintiff and inflicted the injury for which he sues. The plaintiff also testified that, while he knew that the men had been working with the port elevator, he did not know that it was up while the starboard elevator was caught in the flange of the beam, and that if the port elevator had been down, where it should have been, and where he thought it was, the starboard elevator could not have fallen with him more than four or five inches. The court below left the question of the plaintiff's contributory negligence to the determination of the jury, instructing them as follows:

"This involves the inquiry as to whether plaintiff was at fault, first, in allowing the elevator to become fast, whether he knew of the absence of the blocks and should have so operated the winch as to avoid the trouble, and, second, whether he was careless and negligent in going about the work of relieving such elevator from its condition; and in this connection you will consider whether he acted as an ordinarily careful and prudent man would have acted in being upon the elevator when it fell, having in mind the fact that the other or port elevator had become raised meanwhile, and considering whether the plaintiff knew, or ought by the exercise of ordinary diligence to have known, that such port elevator was then raised, and consider his re-

sponsibility, and if his acts were the cause for its being so raised. In this relation you will consider also the part which Smith, the foreman of defendant, played in the affair; not that the company should be held responsible for the acts of Smith, for nothing is contained in the pleadings about that, but for the purpose of ascertaining the real responsibility of the plaintiff for the conditions which conduced to the accident; and if, upon full consideration, you find that the plaintiff's own acts were the proximate cause of his injury, and that those acts were carelessly and negligently done, then your verdict should be for the defendant. This defense is what is ordinarily denominated as that of contributory negligence."

We are of the opinion that the trial court was right in submitting this as well as the other questions in the case to the determination of the jury; and, finding no error for which the case should be reversed, the judgment is affirmed.