GABRIEL DE GREIF v. NORTHWESTERN KNITTING COMPANY.[1]

October 16, 1908.

Nos. 15,703—(207).[2]

**Assumption of Risk.**

> Here plaintiff, aged forty six, for thirty years had handled, broken, and driven horses, had used defendant's horse more than twenty times, and had taken the wagon to a shop and there had given all directions for repairs needed. On the occasion of the injury the horse driven by plaintiff reared and backed the dray against the curb. A truck on the dray fell on plaintiff, who was going to assist his colaborers, and injured him. A majority of the court are of the opinion that the question of assumption of risk from the delivery wagon was for the jury, but that it was error to have submitted to the jury issues concerning the horse. A minority think that as a matter of law plaintiff, an experienced man, assumed the risk of the simple instrumentalities, in a defective condition, with which he was shown to have been familiar.

Action in the district court for Hennepin county to recover $10,-000 for personal injuries. The case was tried before Brooks, J., and a jury which rendered a verdict in favor of plaintiff for $1,500. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and new trial granted.

*A. B. Jackson,* for appellant.

*Todd & Mayo* and *Durment & Moore,* for respondent.

JAGGARD, J.

In this action to recover for personal injuries, plaintiff and respondent was shown to have been a servant of the defendant and appellant from May 16 to August 27, 1906. On the latter day he was undertaking to transfer a box loaded with merchandise from defendant's factory to its warehouse. He used for that purpose a horse and wagon. The allegation was that the wagon was defective, unsafe, and dangerous. When the plaintiff undertook to start the load, the horse reared. Plaintiff stepped down from the dray and pulled

[1] Reported in 118 N. W. 558, 119 N. W. 956.

[2] April, 1908, term calendar.

her around. She took one or two steps forward, and then backed the dray down against the curb with force enough to dislodge the wedges back of the wheel of the truck. The truck ran back down the inclined bed of the dray into the street. Plaintiff ran back toward the end of the wagon "to hold them fellows at work there," and stumbled on a stone in the street. The truck fell on him, and caused the injuries for which recovery is here sought. The plaintiff, aged forty six, had handled, broken, and driven horses, on a farm and elsewhere, for thirty years. The horse he had used more than twenty times before the injury, in course of six weeks, driving the dray. He expressly admitted he knew the wagon had no stakes or chains. He had previously had trouble conveying trucks from the factory to the warehouse. Two or three weeks before the accident the dray had toppled over. The sideboard had never been put back. Shortly after the accident he had taken the wagon to a shop for repairs. He gave the only directions "as to what to do." Knowing that the springs were weak, at least on one side, he had not "thought it worth while to suggest repairing it." He did not remember whether or not he had used a rope furnished with instructions to throw it over the trucks and tie it onto the side of the dray to hold them firmly down on the bed of the dray. The jury returned a verdict for $1,500. This appeal was taken from an order denying the usual alternative motion.

The evidence of defendant's negligence may be conceded for present purposes. The wagon was unfit and inadequately equipped. The gist of the controversy is whether defendant assumed the risk of his master's negligence with full appreciation of the danger to which it exposed him. The doctrine of assumption of risk is determined by a "veritable chaos of conflicting precedents." 31 Am. Law Rev. 667. Such acceptance by the servant has reference to the terms and time of employment, requiring that the master perform his recognized duties to the servant, and that the servant, while not bound to anticipate negligence on his master's part, is required to take care of himself; to the complaints made by the servant and to the promise of the master to remedy; to the character of the instrumentality in the situation and under the conditions of actual use; to the obviousness or latency of the defect, risk, and danger; to the opportunity afforded the servant of knowing the risk and comprehending the danger to

which he was exposed, including circumstances likely to withdraw or distract his attention; to his knowledge of danger and appreciation of the risk in fact; and to other considerations which must vary according to the circumstances of each case. See note to 13 L. R. A. (N. S.) 668. Much of the apparent confusion and uncertainty in the decisions and of the general misconception as to their effect will tend to disappear if it be borne in mind that particular controlling considerations naturally divide the cases into classes, more or less clearly defined, and that the authority of a particular opinion, to an extent necessarily varying, is limited to the class to which it belongs. Except in a general way, it does not control in another class of cases in which the predominating consideration is wanting. The authorities reveal much illogical generalization in this connection.

One class of quite clearly defined cases involves casualties which occur in the use of simple instrumentalities. The general principle is that, in the absence of complaint to the master and of promise on his part to remedy, and of other particular considerations, the risk incident to the use of the instrumentalities in a defective and dangerous condition is, as a matter of law, assumed by a servant of ordinary capacity, intelligence, and experience, where such instrumentalities are of so simple a nature as to reasonably enable such person to understand them, and know the risk, and appreciate the dangers consequent upon their use and operation in a particular situation, which affords an opportunity for observing and comprehending them without serious disturbance of attention. Within this principle the ordinary servant assumes, as a matter of law, the risk incident to the use, e. g., of simple tools in a defective condition. Vanderpool v. Partridge (Neb.) 112 N. W. 318, 13 L. R. A. (N. S.) 668. Cf. Koschman v. Ash, 98 Minn. 312, and cases collected at page 314, 108 N. W. 514, 116 Am. St. 373. So in Priestley v. Fowler, 3 Mees. & W. 1, 5 (which has been said not to have been strictly "a fellow-servant case at all"—Mr. John F. Dillon, in 24 Am. Law Rev. 179), the plaintiff was injured by a van which broke down because it had been overloaded, as plaintiff knew. Lord Abinger said: "In that sort of employment, especially, which is described in the declaration in this case, the plaintiff must have known as well as his master, and probably better, whether the van was sufficient, whether it was over-

loaded, and whether it was likely to carry him safely. In fact, to allow this sort of action to prevail would be an encouragement to the servant to omit that diligence and caution which he is in duty bound to exercise on behalf of his master, to protect him against the misconduct or negligence of others who serve him.    *    *    * "

The case at bar is of this class. No particular consideration serves to differentiate it. The complaint to the master and his promise to remedy were not finally urged on trial or on appeal. The horse and the wagon were both and equally simple instrumentalities. Plaintiff was fully familiar with both. The physical condition and situation, and the risk and the danger incident to their use, were obvious. Priestley v. Fowler, supra; and see Rogers v. Roe, 74 N. J. L. 615, 66 Atl. 408, 13 L. R. A. (N. S.) 601. Plaintiff was a man of mature years and of large experience in this class of work. His opportunity for observing the danger and defect enabled him peculiarly to appreciate both the risk and the danger. Indeed, information by the master must have come, in large measure, through him. On authority and on principle both it follows that as a matter of law he assumed the risk.

Naturally enough counsel for plaintiff in this case have urged upon our attention another class of cases in which untutored girls, boys, and green hands have been injured while employed about intricate and powerful machines operating with great speed. Such machines are constructed and operated upon mechanical principles so elementary and familiar as to make it appear to an expert as simple an instrumentality as a horse and wagon. To an ordinary person, however, they are often difficult to comprehend, and, while full of obvious, abound in hidden, perils. The actual experience in consequent casualties has been so general and disastrous as to lead, in most states, to the statutory requirement of the safeguarding of such machinery. Here occurs a division of opinion upon the subject. In some states the assumption of risk is not a defense, where the master has failed to perform such statutory duty. The majority and dissenting opinions in Hall v. West, 39 Wash. 447, 81 Pac. 915, fully discuss the different views on this subject. And see 4 Am. & Eng. Ann. Cas. 587. In other states—as in this state—it has been held that assumption of risk and contributory negligence apply, notwithstanding this statutory require-

ment.   It is quite evident, however, that the reasoning which compels the conclusion that the servant has, as a matter of law, assumed the risk of ordinary and simple instrumentalities, is consistent with the submission to the jury in the unguarded machinery cases, not invariably, but much more generally.   Specifically cases involving such complicated machines and allied cases without the feature of violation of statute do not apply; logically they are consistent with holding that in this case plaintiff, as a matter of law, assumed the risk.

The result of this view of this case would be to direct the verdict for the defendant.   In it Start, C. J., concurs.   Brown and Elliott, JJ., are of the opinion that the question of the assumption of risk was, under the evidence, for the jury.   They concur in a reversal, however, on the ground that the evidence wholly fails to show that the horse was vicious or unmanageable, and that the court erred in submitting that feature of the case to the jury.   Lewis, J., agrees with the views expressed in the opinion to the extent that the plaintiff assumed the risk of working with the horse, and with Brown and Elliott, JJ., that there was no evidence in the case sufficient to sustain a charge of negligence on account of the viciousness of the horse, and that a new trial should be granted; that, in so far as the plaintiff was called upon to assist in conveying the unwieldy box in a wagon entirely unsuitable for the purpose, the actions of the horse were not necessarily the proximate cause of the accident; and that the question of assumption of risk was one of fact for the consideration of the jury.

Reversed and new trial granted.


On March 4, 1909, the following opinion was filed:

PER CURIAM.

A reargument of this case on briefs was granted.   Upon re-examination and consideration of the record we are satisfied that the original decision and order should be adhered to.

So ordered.