### W. C. LEE v. WILD RICE LUMBER COMPANY.[1]

July 19, 1907.

Nos. 15,245—(192).

**Master and Servant—Negligence.**

> The evidence sustains the jury in finding that appellant was negligent in directing respondent to assist in adjusting a belt tightener in its planing mill without providing proper handholds or ladders, and in finding that respondent was not guilty of contributory negligence and did not assume the risks of using a certain brace in ascending and descending the wall of the building for the purpose of adjusting the tightener. No errors in the charge of the court.

Action in the district court for Norman county to recover $5,000 for personal injuries. The case was tried before Grindeland, J., and a jury which rendered a verdict for $3,000 in favor of plaintiff. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

Price Wickersham and Armand Albrecht, for appellant.

W. E. Rowe and Peter Matson, for respondent.

LEWIS, J.

Appellant company was operating a planing mill, consisting of a one-story wooden structure eighty feet long and twenty two feet wide. The machines were located on the main floor, and about eight

[1] Reported in 112 N. W. 887.

or nine feet above, on a number of cross-pieces or joists, referred to in the evidence as the second story, were the shafts and pulleys operating the same. Between two of the joists, at a point about five feet south of the north wall, was an appliance known as the "blower," made of galvanized iron and about the size of an ordinary hard coal burner, in which a fan revolved to generate the air suction to carry away the shavings and sawdust. It was operated by a belt upon a pulley at the east of the blower, and the belt was kept taut by means of a contrivance known as a "belt tightener," constructed of two 6x8 beams, twelve feet high and eighteen inches apart, fastened together by cross-pieces; the lower end being attached to two joists by means of a bolt. Attached to the top of the belt tightener was a cable, which ran through a pulley fastened to the north wall, to the lower end of which was attached a two-foot square box filled with rock and scrap iron, which acted as a weight to pull the top of the tightener to the north, thus keeping the belt taut. Between a diagonal beam in the north wall and the blower was a 2x4 scantling brace, five feet long, placed there for the purpose of lessening the vibration in the blower. Between the tightener and the north wall there was a space of about three feet, and across the joists between which the tightener was fastened a 2x10 plank, five feet long, was placed. Leading from the first floor to the joists above, in the northeast corner of the building, was a stairway. In order to repair the broken lacings in the belt, the machinery was stopped, and the men directed to do the work would ascend the steps, remove some of the scrap iron in the box, and by means of the joists, loose plank, rafters, and studding climb up the north wall and take position behind the upper end of the tightener and shove it forward into an upright position, and, when the belt was repaired, release the tightener and climb down in the manner most convenient.

September 14, 1905, Knute G. Lee was engaged in running a surface planing machine on the main floor. He was directed by the foreman to go with another employee and push the tightener into an upright position for the purpose of loosening the belt, that it might be relaced. The men went up the stairway, and by means of the joists, plank, rafters, and studding climbed up the wall and shoved the tightener forward, holding it until the belt was repaired, when

they released the same and began their descent. The fellow employee,. Balke, testified that as he was in the act of stepping down to the plank he noticed Lee falling at a point about where the 2x4 brace was located, and that he fell through the opening between the plank and the tightener to the floor below, and that Lee and the brace went down together. The brace was found at Lee's side on the floor, and he died from the effects of the injuries.

The personal representatives of the deceased base their claim for damages upon the ground that appellant was negligent in directing Lee to assist in the work of shoving forward the tightener without providing a reasonably safe place for him to do his work. The complaint charged that on September 14, 1905, the belt needed relacing, and Lee was directed by appellant to leave the machine which he was operating and ascend to the girders above and help shove forward the belt tightener, in order that the belt might be repaired; that he was ignorant of the manner and method of doing the work, but that he was directed by appellant to climb up on the timbers and studding of the north wall, and acted in the manner so pointed out to him; that after adjusting the tightener, and when about to descend, he stepped upon the 2x4 scantling brace, not knowing it was insecurely fastened at the end which rested against the blower pipe, and the brace, not being securely fastened, slid out of position under his weight, and on account thereof he was thrown to the floor below. Appellant contended in the court below, and also on this appeal, that the evidence was insufficient to sustain the allegations of negligence,. because there was an entire absence of proof that it was feasible to maintain a ladder, or other special means, for descent at the point in question, and that the evidence completely failed to show that the absence of guards or platforms was the cause of decedent's fall; that the evidence does not show that the brace was provided by appellant as a foothold for the use of its servants; and that the evidence is. not sufficient to show that Lee stepped on the brace, or used it as a means of getting down.

The following facts were shown with reasonable certainty: The mill had been in operation for a number of months, that it was necessary to repair the belt which ran from the main shaft to the blower about every two months; that in order to make such repairs the mill

had to be stopped, and the tightener pushed into an upright position in order to loosen the belt; that the tightener was about twelve feet high, made of heavy timbers, and, in order to move it, it was necessary for at least two men to climb up on the timbers and studding of the north wall in order to get into position to get the proper purchase; that no ladder or handholds were provided for the men to help them in getting up and down in doing this work, and, if not expressly directed to take hold of particular timbers, girders, rafters, and studding, they were left to climb up as best they could. It is not material if the evidence was not sufficient to indicate that a custom had been established with reference to a particular way in which the men should get up and down. Under the pleadings, it was sufficient that the master knew, or by the exercise of ordinary care would have known, that the tightener would be manipulated in the manner stated. No other way was pointed out to the men, or shown upon the trial. While the 2x4 brace was not intended to be a part of the permanent structure of the building, and apparently was not put in for the purpose of furnishing the men an additional means of climbing up and down, yet it was in a position which made it a very convenient footrest or handle. It does not conclusively appear from the evidence that the brace was of such temporary character as to appear unsafe for the purpose of taking hold of or stepping upon in going up and down the wall. The foreman himself had, upon different occasions, stepped on the brace and used it as a means of assistance in getting up and down, and other employees had also used it for the same purpose, and it was a most natural thing on this occasion for Lee, who was uninstructed as to the nature of the brace and the character of its fastenings, and unfamiliar with the location, never having assisted in that work before, to step on it, or take hold of it in going up and down. We do not hesitate to state that under those circumstances it became a question of fact whether the master exercised ordinary care in failing to furnish suitable handholds or other means for the men to make the ascent and descent. The question was properly submitted to the jury, and in this respect the case is very similar to that of Samuelson v. Hennepin Paper Co., 101 Minn. 443, 112 N. W. 537.

While the evidence does not precisely indicate how Lee came to fall, and it is possible that he may have slipped or lost his balance while

standing on the timbers above, and displaced the brace by falling on it, yet it was for the jury to say, under all the evidence, whether or not he did not fall by reason of stepping upon or by taking hold of the brace in his descent. The men had finished their work, and were in the act of getting down. Lee's co-employee, Balke, was in the act of stepping upon the plank, and it does not appear that he was attracted by any disturbance or outcry from Lee prior to the time he saw him fall. If Lee had slipped and fallen on the brace, the disturbance would have been more likely to have attracted the attention of Balke. We do not consider the evidence to be of such uncertainty as to take the question into the realm of conjecture. The circumstances of this case were not such as to place upon the decedent, as a matter of law, the responsibility of using the brace. The question of assumption of risk was fairly left to the jury, to determine whether under the circumstances he had a right to assume that it was safe for the purpose.

The question of contributory negligence was also for the jury. Appellant requested the court to charge the jury:

> The plaintiff cannot recover in this case, unless you find from a fair preponderance of the evidence that the defendant has been negligent in the way claimed by the plaintiff in his complaint.

The court charged as follows:

> Now, the defendant owed the duty to the decedent to exercise ordinary care by furnishing safe tools and implements for his use, and having a proper place in which to prosecute his work, and a reasonably safe means of access to and from his work. If the defendant failed in any of these particulars, and by reason of such failure decedent was injured, then plaintiff would be entitled to recover, unless you should find that decedent's negligence or carelessness contributed in some way to his own injury.

This excerpt must be read in connection with the entire charge. The material element of negligence charged in the complaint was that appellant failed to furnish a safe place in which to do the work; but,

of course, such work did not call for the use of any tools or implements in the ordinary sense. Although the reference to tools and implements was unnecessary, it was not prejudicial.

Appellant also requested the court to charge:

> If you find that the evidence does not show what caused Knute G. Lee to fall, but that the cause of his falling is a matter of guesswork, conjecture, or speculation, then your verdict must be for the defendant.

This was refused; but the court did charge that, if the jury should find from the evidence that Lee's fall might reasonably be attributed to any other cause than the negligence alleged in the complaint, then the verdict must be for defendant. Appellant insists that by this instruction the jury were left to guess as to the cause of Lee's fall, even though they should find there was no evidence reasonably tending to show that he fell by some other manner than as charged in the complaint. This criticism might be warranted, if it included all the court had to say on the question; but, when the entire charge is considered, it is plain that the court fairly explained to the jury that they could not return a verdict for respondent, unless by a fair preponderance of the evidence they found that appellant was negligent in the manner charged in the complaint, and that such act of negligence was the proximate cause of the injury.

Appellant also took exception to the charge of the court on the assumption of risk. By selecting certain portions of the charge the point may be made that certain statements of the court are incomplete; but, when considered in its entirety, it cannot be reasonably claimed that the court did not fairly present to the jury the true rule of law in that respect. The court at some length went over the different phases of the evidence and used the following language, which is criticised:

> But the decedent did not, when he entered the service of the defendant, assume the risks and dangers occasioned by the carelessness or negligence of the defendant; or, to restate the proposition, he did not assume the dangers or risks incident to the failure upon the part of the defendant to perform duties it owed to its employees. And if the decedent's injury in this

> case was the result of the ordinary risks and dangers of his occupation, then he could recover no damages for such injury; * * * but if the decedent's injury was occasioned by the negligence or carelessness of the defendant, then plaintiff may recover, unless decedent's own carelessness or negligence in some way contributed to his injury.

This part of the charge is not, of itself, complete. In another connection the court said:

> If you find from the evidence that said Knute G. Lee did actually know the dangers and appreciate the risks to which he was exposed at the time of the accident, or that in the exercise of ordinary care or prudence and the use of his senses he should have known such dangers and appreciated the risk thereof, then your verdict must be for the defendant.

And again:

> Said Knute G. Lee was himself required by the law to exercise such care for his personal safety at the time and place of the accident as a reasonably prudent and careful man would have exercised under the same circumstances. If he failed to do so, the plaintiff cannot recover.

The complaint charged appellant with negligence in failing to provide a platform across the girders between the lower end of the tightener and the north wall, as well as negligence in failing to provide handholds and ladder in order to get up and down; and the court charged the jury that, "if the platform in question and the wall back of the belt tightener were the means used by the defendant to enable its employees to stand while making the repairs in question, then the defendant was bound to exercise reasonable care to have the said platform so floored or properly covered and guarded as not to be dangerous to persons required to pass upon or stand thereon." According to the evidence, there was no platform, but merely a plank laid across the cross-beams upon which the men stepped or stood. It is evident that the court meant that, if the space between the tightener and the north wall had been completely covered, then decedent would

not have fallen. There was no dispute about the evidence, and the term "platform," used by the court, was not misleading under the circumstances. In our judgment, the proposition was sound. If appellant was negligent in the manner charged, and in maintaining an insecure brace three feet above the plank, then it was negligent in leaving the space between the floor and wall uncovered; for, had it been covered, in all probability Lee would not have been injured.

We find no errors in the other assignments.

Order affirmed.