EDWARD ENGLUND v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

July 9, 1909.

Nos. 16,180—(78).

**Assumption of Risk.**

Plaintiff, as defendant's foreman, was engaged in turning a crank attached to a small cog wheel, whereby a larger cog wheel wound round a drum the wire by which steel buckets, fastened to it and suspended by it from a derrick on a pivot, were raised or lowered from one floor to another of defendant's coal shed. Metal rods near the bottom of the bucket, a part of a device for discharging coal by allowing the bottom to drop down, projected beyond the surface of the bucket. One of these rods caught in a hole in the floor of the second story. The crank in plaintiff's hand reversed suddenly, and inflicted the injury for which recovery is sought. Plaintiff, in charge of the coal house, had actual knowledge of all physical conditions. It is *held* that he assumed the risk.

Action in the district court for Becker county to recover $7,500 for personal injuries. The case was tried before Taylor, J., and a jury which returned a verdict in favor of plaintiff for $2,500. From an order denying defendant's motion for judgment notwithstanding

[1]Reported in 122 N. W. 454.

the verdict or for a new trial, it appealed.    Reversed and judgment ordered for defendant.

C. J. Gunderson, C. M. Johnston, Alfred H. Bright and John L. Erdall, for appellant.

M. J. Daly, for respondent.

JAGGARD, J.

Plaintiff and respondent, as foreman, had charge of the coal house of defendant and appellant.    His duty was to coal engines.    A derrick raised and lowered large steel buckets from the first to the second floor of that house by means of an iron cable wound round a drum towards the foot of the derrick.    The house was twenty by thirty feet in size.    The drum was moved by a large cog wheel, moved by a small cog wheel, which in turn was moved by a crank operated by plaintiff.    The derrick swung on a pivot at its base, so that a bucket, when raised, could be placed on the second floor at any point beyond the opening in the second floor through which the derrick was constructed.    The iron rods at the bottom of the bucket, which allowed the coal to be discharged, projected outside and beyond the surface of the bucket to the extent of one or two inches.    On the day of the accident plaintiff was turning the crank to bring down an empty bucket on the second floor.    That bucket was being dragged over the floor towards the opening in it, when one of the projecting prongs of the iron rod caught in a hole in the floor.    This caused the drum and big cog wheel to stop suddenly, to shake plaintiff's hand from the handle of the crank, and to throw it onto the large cog wheel.    The revolving crank struck plaintiff's finger and produced the damages here sought to be recovered.

Defendant was charged with negligence in three particulars, namely:    (1) In allowing this hole or crack in the floor, in which the bucket caught, to remain without being repaired for a long time; (2) in placing the crank on the derrick dangerously close to the large cog wheel; and (3) in failing to cover the cog wheels.    The defendant denied negligence, and insisted that plaintiff assumed the risk.    The jury returned a verdict for plaintiff.    This appeal was taken from the order of the trial court denying the usual motion in the alternative.

Upon the assumption that the master was negligent in the performance of its duty to plaintiff, the question arises whether plaintiff was precluded from recovery of damages because he assumed the risk. It is evident from the statement of facts that the proximate cause of the injury was the fact that the projecting rod of the bucket caught and was held by the hole in the floor. The nearness of the crank to the big wheel was properly a condition having no natural tendency in itself to produce the accident. This may also be true of the failure to guard the machine, the breach of the duty of the master in respect to which is here assumed; but it is also to be borne in mind that, for aught appearing in the record, plaintiff would have been as much injured by having his finger hit by the crank if it had been resting on a guard as when it was resting on the wheel. It is to be noted that plaintiff's finger was not shown to have been caught in the spaces between the protruding cogs of the big and little cog wheels.

Plaintiff, forty-four years of age, had worked in the coal shed from time to time for more than a year, and after March 1, 1907, had been foreman of the shed. The accident occurred August 2, 1907. In substantially his own words, he had seen the hole in the floor for the first time in April of that year. He could see it from the machine where he stood. It seemed to be a sliver or something pushed down just between the cracks in the boards. He said nothing about the crack. He knew that buckets, in being hauled over the floor would wobble and swing from one projection of the rod to the other, and that they would hit the floor. Plaintiff's eyes necessarily rested on the crack and on the cog wheel. The proximity of the crank to the wheel and the absence of a guard on the wheel were most "readily observable." Plaintiff had actual knowledge of all the physical facts which were the necessary cause and conditions of the accident. His actual knowledge was equal to that which could have been obtained by or was attributable to the master. As foreman in charge of the place, he was, indeed, the very person best in a position to have advised the master of the defect in the premises or to have remedied it himself. An inspector could have told the master no fact in connection with the plant or its operation of which the plaintiff did not know.

The condition thus presented, it is true, suggested to him no danger. But if, as has been assumed, the circumstances should have caused the master apprehension of possible harm, so as to have made it his duty to repair the floor, why should not the plaintiff also have realized the danger? It does not appear from any testimony in the record that the master had any greater experience, any greater reason to anticipate harm from the conditions presented, than the plaintiff. While it is elementary that the servant is not required to look for danger, it is also well settled that, when he knows all the conditions from which harm to him would naturally flow, knowledge and appreciation of the risk are not necessarily, but may be justly, imputed to him. Rase v. Minneapolis, St. P. & Sault Ste. Marie Ry. Co., 107 Minn. 260, 120 N. W. 360. It was obvious that the projecting rods in the bucket were likely to be caught as the bucket was "wobbled" along the floor on its bottom near the crack. The reversal of the crank in such a case was certain. The possibility of harm did not arise from any latent conditions. The sources of danger were not only readily observable, but had been actually observed, and for a long time. No more complicated, abstruse law of physics was involved than in the cracking of a whip. The danger was not obscure, but plain.

The case at bar is within the rule laid down by Mr. Justice Moody in Butler v. Frazee, 211 U. S. 459, 466, 29 Sup. Ct. 136, 53 L. Ed. 281 (in which the facts, however, bore no particular resemblance to those in the case at bar), namely: "Where the elements and combination out of which the danger arises are visible, it cannot always be said that the danger itself is so apparent that the employee must be held, as a matter of law, to understand, appreciate and assume the risk of it.  *  *  *  The visible conditions may have been of recent origin, and the danger arising from them may have been obscure. In such cases, and perhaps others that could be stated, the question of the assumption of the risk is plainly for the jury. But where the conditions are constant and of long standing, and the danger is one that is suggested by the common knowledge which all possess, and both the conditions and the dangers are obvious to the common understanding, and the employee is of full age, intelligence and adequate experience, and all these elements of the problem appear

without contradiction from the plaintiff's own evidence, the question becomes one of law for the decision of the court. Upon such a state of the evidence a verdict for the plaintiff cannot be sustained, and it is the duty of the judge presiding at the trial to instruct the jury accordingly."

It follows that plaintiff must be held to have assumed the risk as a matter of law.

Reversed and judgment for defendant ordered accordingly.